1  LYNN HUBBARD, III, SBN 69773
2  SCOTTLYNN J HUBBARD, IV, SBN 212970
   **DISABLED ADVOCACY GROUP, APLC**
3  12 Williamsburg Lane
   Chico, CA 95926
4  Telephone: (530) 895-3252
   Facsimile: (530) 894-8244
5
6  Attorneys for Plaintiff

FILED

08 MAR 13 PM 4: 15

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY                    DEPUTY

ORIGINAL

7
8
9                  UNITED STATES DISTRICT COURT
10                SOUTHERN DISTRICT OF CALIFORNIA
11
12

13  Barbara Hubbard,                    ) No.    '08 CV 4 7 1   JAH LSP
                                        )
14        Plaintiff,                     )
                                        )  **Plaintiff's Complaint**
15        vs.                            )
                                        )
16  C.V. Center, Inc.; Jamba Juice       )
17  Company dba Jamba Juice #603;        )
    Casual Dining Services, Inc. dba     )
18  Pizzeria Uno; Mervyn's, LLC;         )
19  Starbucks Corporation dba Starbucks  )
    Coffee #6632; J.C. Penney            )
20  Company, Inc. dba JCPenney #1274;    )
21  Serler, Inc. dba Subway #31595;      )
22  Manna Development Group, LLC          )
    dba Panera Bread Café #4284,         )
23                                       )
24        Defendants.                    )
                                        )
25
26
27
28

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint
                           Page 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. SUMMARY

1.    Ther is a civil rights action by plaintiff Barbara Hubbard ("Hubbard") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complexes known as:

Chula Vista Center – Common Areas
555 Broadway
Chula Vista, CA  91910
(hereafter "the Chula Vista Center Common Area Facility")

Jamba Juice #603
555 Broadway, Suite #135
Chula Vista, CA  91910
(hereafter "the Jamba Juice Facility")

Pizzeria Uno
555 Broadway, Suite #1078
Chula Vista, CA  91910
(hereafter "the Pizzeria Uno Facility")

Mervyn's
555 "I" Street
Chula Vista, CA  91910
(hereafter "the Mervyn's Facility")

Starbucks Coffee #6632
555 Broadway, Suite 100B
Chula Vista, CA  91910
(hereafter "the Starbucks Facility")

JCPenney #1274
591 Broadway
Chula Vista, CA  91910
(hereafter "the JCPenney Facility")

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

Subway #31595
555 Broadway, Suite #145
Chula Vista, CA  91910
(hereafter "the Subway Facility")

Panera Bread Café #4284
555 Broadway, Suite #127
Chula Vista, CA  91910
(hereafter "the Panera Bread Facility")

2.    Pursuant to the Americans with Disabilities Act of 1990, ( 42 U.S.C. §§ 12101 et seq.), and related California statutes, Hubbard seeks damages, injunctive and declaratory relief, and attorney fees and costs, against:

- C.V. Center, Inc. (hereinafter the "Chula Vista Center Defendant")
- Jamba Juice Company dba Jamba Juice #603 and C.V. Center, Inc. (hereinafter the "Jamba Juice Defendants")
- Casual Dining Services, Inc. dba Pizzeria Uno and C.V. Center, Inc. (hereinafter the "Pizzeria Uno Defendants")
- Mervyn's, LLC dba Mervyn's and C.V. Center, Inc. (hereinafter the "Mervyn's Defendants")
- Starbucks Corporation dba Starbucks Coffee #6632 and C.V. Center, Inc. (hereinafter the "Starbucks Defendants")
- J.C. Penney Company, Inc. dba JCPenney #1274 and C.V. Center, Inc. (hereinafter the "JCPenney Defendants")
- Serler, Inc. dba Subway #31595 and C.V. Center, Inc. (hereinafter the "Subway Defendants")
- Manna Development Group, LLC dba Panera Bread Café #4284 and C.V. Center, Inc. (hereinafter the "Panera Bread Defendants")

1

## II. JURISDICTION

2    3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and
3    1343 for ADA claims.

4    4.    Supplemental jurisdiction for claims brought under parallel
5    California law—arising from the same nucleus of operative facts—is predicated
6    on 28 U.S.C. § 1367.

7    5.    Hubbard's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

8

## III. VENUE

9    6.    All actions complained of herein take place within the jurisdiction
10    of the United States District Court, Southern District of California, and venue is
11    invoked pursuant to 28 U.S.C. § 1391(b), (c).

12

## IV. PARTIES

13    7.    The Chula Vista Center Defendant owns, operates, or lease the
14    Chula Vista Center Common Area Facility, and consists of a person (or persons),
15    firm, or corporation.

16    8.    The Jamba Juice Defendants own, operate, or lease the Jamba Juice
17    Facility, and consist of a person (or persons), firm, or corporation.

18    9.    The Pizzeria Uno Defendants own, operate, or lease the Pizzeria
19    Uno Facility, and consist of a person (or persons), firm, or corporation.

20    10.    The Mervyn's Defendants own, operate, or lease the Mervyn's
21    Facility, and consist of a person (or persons), firm, or corporation.

22    11.    The Starbucks Defendants own, operate, or lease the Starbucks
23    Facility, and consist of a person (or persons), firm, or corporation.

24    12.    The JCPenney Defendants own, operate, or lease the JCPenney
25    Facility, and consist of a person (or persons), firm, or corporation.

26    13.    The Subway Defendants own, operate, or lease the Subway Facility,
27    and consist of a person (or persons), firm, or corporation.

28

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

14.    The Panera Bread Defendants own, operate, or lease the Panera Bread Facility, and consist of a person (or persons), firm, or corporation.

15.    Hubbard has multiple conditions that affect one or more major life functions. She requires the use of motorized wheelchair and a mobility-equipped vehicle, when traveling about in public. Consequently, Hubbard is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V. FACTS

16.    The Chula Vista Center Common Area Facility is an establishment serving food and drink, open to the public, which is intended for nonresidential use and whose operation affects commerce.

17.    The Jamba Juice Facility is an establishment serving food and drink, open to the public, which is intended for nonresidential use and whose operation affects commerce.

18.    The Pizzeria Uno Facility is an establishment serving food and drink, open to the public, which is intended for nonresidential use and whose operation affects commerce.

19.    The Mervyn's Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

20.    The Starbucks Facility is an establishment serving food and drink, open to the public, which is intended for nonresidential use and whose operation affects commerce.

21.    The JCPenney Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

22.    The Subway Facility is an establishment serving food and drink, open to the public, which is intended for nonresidential use and whose operation affects commerce.

23.    The Panera Bread Facility is an establishment serving food and drink, open to the public, which is intended for nonresidential use and whose operation affects commerce.

24.    Hubbard visited these facilities and encountered barriers (both physical and intangible) that interfered with—if not outright denied—her ability to use and enjoy the goods, services, privileges, and accommodations offered at all of the facilities.

25.    To the extent known by Hubbard, the barriers at the Chula Vista Center Common Area Facility included, but are not limited to, the following:

*Restroom in Common Area*:

- The water closet's flush valve is not on the wide side;
- There is no handle mounted below the lock on the interior of the accessible stall door;
- The stall door is not self-closing;
- The toilet tissue dispenser protrudes into the clear maneuvering space needed to access the water closet;
- The trash receptacle encroaches into the clear floor and maneuvering space needed to access the water closet;
- The toilet tissue dispenser and disposable seat cover dispenser are obstructions to the use of the side grab bar;
- The toilet tissue dispenser is mounted at more than 19 inches from the floor;
- The side grab bar is not mounted 12 inches from the back wall;
- The pipes underneath the lavatory(ies) are either not properly wrapped or not wrapped at all;

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

Page 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- The soap dispensers (both) are mounted on the wall behind the lavatories and out of the required reach ranges;
- The soap dispensers (both) are mounted at more than 40 inches from the floor;
- The paper towel dispenser is mounted out of the required reach range and at more than 40 inches from the floor;
- The mirror is mounted at more than 40 inches from the floor;
- The trash receptacle interferes with the required strike side clearance on the pull side of the restroom door;

*Parking in Common Area*:

- There is a built-up curb ramp protruding into the access aisle, causing the access aisle to have a slope and cross slope greater than 2.0% (near the Mervyn's Facility);
- The access aisle adjacent to the van accessible stall is not the correct size (too narrow)(near the Mervyn's Facility)
- The signage designating a space as "van accessible" is not correct (throughout the entire parking area);
- There are no detectable warnings where the accessible path of travel crosses into the vehicular way (throughout the entire parking area);
- The signs designating spaces as "van accessible" are not correct (throughout the entire parking area); and,
- The words "NO PARKING" are not painted within the access aisles (throughout the entire parking area");
- At least one space is marked as accessible by the International Symbol of Accessibility (hereafter "ISA") painted in it, but lacks any signage at all (throughout the entire parking area);
- One or more of the paths of travel from the accessible spaces to the entrance(s) force a wheelchair occupant to travel behind parked vehicles.

1   These barriers prevented Hubbard from enjoying full and equal access at the
2   Chula Vista Center Common Area Facility.

3         26.    Hubbard was also deterred from visiting the Chula Vista Center
4   Common Area Facility because she knew that the Chula Vista Center Common
5   Area Facility's goods, services, facilities, privileges, advantages, and
6   accommodations were unavailable to physically disabled patrons (such as
7   herself). She continues to be deterred from visiting the Chula Vista Center
8   Common Area Facility because of the future threats of injury created by these
9   barriers.

10        27.    To the extent known by Hubbard, the barriers at the Jamba Juice
11  Facility included, but are not limited to, the following:

12  • There is no seating designated as accessible for the disabled (inside or
13     outside);
14  • There is no seating accessible to the disabled (inside or outside);
15  • The entrance door requires too much force to operate;
16  • There is no ISA indicating that this facility is accessible to the disabled;
17  • There is no portion of the counter lowered to accommodate patrons in
18     wheelchairs;
19  • The pipes underneath the lavatory in the restroom are not wrapped to
20     protect from burns;
21  • The trash receptacle is an obstruction to the required strike side clearance
22     on the restroom door when exiting; and,
23  • The mirror is mounted at more than 40 inches from the floor;

24  These barriers prevented Hubbard from enjoying full and equal access at the
25  Jamba Juice Facility.

26        28.    Hubbard was also deterred from visiting the Jamba Juice Facility
27  because she knew that the Jamba Juice Facility's goods, services, facilities,
28  privileges, advantages, and accommodations were unavailable to physically

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

disabled patrons (such as herself). She continues to be deterred from visiting the Jamba Juice Facility because of the future threats of injury created by these barriers.

29.    To the extent known by Hubbard, the barriers at the Pizzeria Uno Facility included, but are not limited to, the following:

- The baby changing station is an obstruction to the lavatory, the soap dispenser, and the accessible stall in general;
- There is no handle mounted below the latch on the interior of the stall door;
- The stall door is not self-closing;
- The side grab bar is not mounted 12 inches from the back wall;
- The pipes underneath the lavatory are not properly wrapped or not wrapped at all;
- The soap dispenser is mounted at more than 40 inches from the floor; and,
- The paper towel dispenser is mounted at more than 40 inches from the floor.

These barriers prevented Hubbard from enjoying full and equal access in the Pizzeria Uno Facility.

30.    Hubbard was also deterred from visiting the Pizzeria Uno Facility because she knew that the Pizzeria Uno Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Pizzeria Uno Facility because of the future threats of injury created by these barriers.

31.    To the extent known by Hubbard, the barriers at the Mervyn's Facility included, but are not limited to, the following:

- The entrance lacks an ISA to indicate that the Mervyn's Facility is accessible;

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1  • At least one aisle is not 36 inches wide (in fact there are numerous aisles
2  throughout the Mervyn's Facility that are less than 36 inches wide);
3  • The flush valve is not located on the wide side of the water closet;
4  • The stall door is not self-closing;
5  • There is no handle mounted below the lock on the interior of the stall
6  door;
7  • The toilet tissue dispenser protrudes into the clear maneuvering space
8  needed to access the water closet;
9  • Both the toilet tissue and disposable seat cover dispensers are obstructions
10  to the use of the side grab bar;
11  • The mirror is mounted at more than 40 inches from the floor;
12  • The pipes underneath the lavatory are not wrapped;
13  • The paper towel dispenser is mounted at more than 40 inches from the
14  floor;
15  • There is insufficient strike side clearance on the push side of the restroom
16  door; and,
17  • The disabled changing room is blocked by merchandise on carts.
18  These barriers prevented Hubbard from enjoying full and equal access.

19  32.    Hubbard was also deterred from visiting the Mervyn's Facility
20  because she knew that the Mervyn's Facility's goods, services, facilities,
21  privileges, advantages, and accommodations were unavailable to physically
22  disabled patrons (such as herself). She continues to be deterred from visiting the
23  Mervyn's Facility because of the future threats of injury created by these
24  barriers.

25  33.    To the extent known by Hubbard, the barriers at the Starbucks
26  Facility included, but are not limited to, the following:
27  • There is no ISA mounted at the entrance to indicate that the Starbucks
28  Facility is accessible to the disabled;

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1    • The entrance door requires too much force to operate;

2    • The restroom door requires too much force to operate;

3    • There is no seating designated as accessible for the disabled (inside or

4       out);

5    • There is no accessible seating (inside or out);

6    • The toilet tissue dispenser is mounted at more than 19 inches from the

7       floor;

8    • The disposable seat cover dispenser is mounted at more than 40 inches

9       from the floor;

10   • The lavatory control requires too much pressure to operate.

11   • The pipes underneath the lavatory are not wrapped; and,

12   • The soap dispenser control requires too much pressure to operate.

13   These barriers prevented Hubbard from enjoying full and equal access of the

14   Starbucks Facility.

15       34.    Hubbard was also deterred from visiting the Starbucks Facility

16   because she knew that the Starbucks Facility's goods, services, facilities,

17   privileges, advantages, and accommodations were unavailable to physically

18   disabled patrons (such as herself). She continues to be deterred from visiting the

19   Starbucks Facility because of the future threats of injury created by these

20   barriers.

21       35.    To the extent known by Hubbard, the barriers at the JCPenney

22   Facility included, but are not limited to, the following:

23   • The ISA at the entrance is not correct (wrong color);

24   • There is no signage at the women's restroom indicating that it is accessible

25       to the disabled;

26   • The stall door is not self-closing;

27   • There is no handle mounted below the lock on the interior of the stall

28       door;

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

- The side grab bar is not mounted 12 inches from the back wall;
- The disposable seat cover dispenser is mounted at more than 40 inches from the floor;
- The toilet tissue dispenser is mounted too far from the back wall;
- The toilet tissue dispenser protrudes into the clear maneuvering space needed to access the water closet;
- The soap dispenser is mounted out of the required reach range and at more than 40 inches from the floor;
- The trash receptacle is an obstruction to the use of the paper towel dispenser;
- The paper towel dispenser is mounted at more than 40 inches from the floor; and,
- The pipes underneath the lavatory are not properly wrapped.

These barriers prevented Hubbard from enjoying full and equal access of the JCPenney Facility.

36.    Hubbard was also deterred from visiting the JCPenney Facility because she knew that the JCPenney Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the JCPenney Facility because of the future threats of injury created by these barriers.

37.    To the extent known by Hubbard, the barriers at the Subway Facility included, but are not limited to, the following:

- There is no ISA at the entrance to indicate that the Subway Facility is accessible to the disabled;
- The entrance door requires too much force to operate;
- There is no seating designated as accessible for the disabled (inside or out);

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1      • There is no accessible seating (inside or out);

2      • The toilet tissue dispenser protrudes into the clear maneuvering space

3         needed to access the water closet;

4      • The grab bar is too short; and,

5      • The pipes underneath the lavatory are not properly wrapped.

6 These barriers prevented Hubbard from enjoying full and equal access at the

7 Subway Facility.

8        38.    Hubbard was also deterred from visiting the Subway Facility

9 because he knew that the Subway Facility's goods, services, facilities, privileges,

10 advantages, and accommodations were unavailable to physically disabled

11 patrons (such as herself). He continues to be deterred from visiting the Subway

12 Facility because of the future threats of injury created by these barriers.

13        39.    To the extent known by Hubbard, the barriers at the Panera Bread

14 Facility included, but are not limited to, the following:

15      • There is no ISA mounted to indicate that the Panera Bread Facility is

16         accessible to the disabled;

17      • The entrance door requires too much force to operate;

18      • The mats on the floor at the entrance are not securely attached;

19      • The stall door is not self-closing;

20      • There is no handle mounted below the lock on the interior of the stall

21         door; and,

22      • The pipes underneath the lavatory are not properly wrapped.

23 These barriers prevented Hubbard from enjoying full and equal access at the

24 Panera Bread Facility.

25        40.    Hubbard was also deterred from visiting the Panera Bread Facility

26 because she knew that the Panera Bread Facility's goods, services, facilities,

27 privileges, advantages, and accommodations were unavailable to physically

28

1  disabled patrons (such as herself). She continues to be deterred from visiting the
2  Subway Facility because of the future threats of injury created by these barriers.

3      41.    Hubbard also encountered barriers at the various facilities which
4  violate state and federal law, but were unrelated to her disability. Nothing within
5  this Complaint, however, should be construed as an allegation that Hubbard is
6  seeking to remove barriers unrelated to her disability.

7      42.    The Chula Vista Center Defendant knew that these elements and
8  areas of the Chula Vista Center Common Area Facility were inaccessible, violate
9  state and federal law, and interfere with (or deny) access to the physically
10  disabled.    Moreover, the Chula Vista Center Defendant has the financial
11  resources to remove these barriers from the Chula Vista Center Common Area
12  Facility (without much difficulty or expense), and make the Chula Vista Center
13  Common Area Facility accessible to the physically disabled.  To date, however,
14  the Chula Vista Center Defendant refuses to either remove those barriers or seek
15  an unreasonable hardship exemption to excuse non-compliance.

16      43.    At all relevant times, the Chula Vista Center Defendant has
17  possessed and enjoyed sufficient control and authority to modify the Chula Vista
18  Center Common Area Facility to remove impediments to wheelchair access and
19  to comply with the Americans with Disabilities Act Accessibility Guidelines and
20  Title 24 regulations.  The Chula Vista Center Defendant has not removed such
21  impediments and has not modified the Chula Vista Center Common Area
22  Facility to conform to accessibility standards. The Chula Vista Center Defendant
23  has intentionally maintained the Chula Vista Center Common Area Facility in its
24  current condition and has intentionally refrained from altering Chula Vista
25  Center Common Area Facility so that it complies with the accessibility
26  standards.

27      44.    Hubbard further alleges that the (continued) presence of barriers at
28  the Chula Vista Center Common Area Facility is so obvious as to establish the

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1   Chula Vista Center Defendant's discriminatory intent.[1]   On information and
2   belief, Hubbard avers that evidence of the discriminatory intent includes the
3   Chula Vista Center Defendant's refusal to adhere to relevant building standards;
4   disregard for the building plans and permits issued for the Chula Vista Center
5   Common Area Facility; conscientious decision to the architectural layout (as it
6   currently exists) at the Chula Vista Center Common Area Facility; decision not
7   to remove barriers from the Chula Vista Center Common Area Facility; and
8   allowance that the Chula Vista Center Common Area Facility continues to exist
9   in its non-compliant state.  Hubbard further alleges, on information and belief,
10  that the Chula Vista Center Defendant is not in the midst of a remodel, and that
11  the barriers present at the Chula Vista Center Common Area Facility are not
12  isolated (or temporary) interruptions in access due to maintenance or repairs.[2]

13       45.    The Jamba Juice Defendants knew that these elements and areas of
14  the Jamba Juice Facility were inaccessible, violate state and federal law, and
15  interfere with (or deny) access to the physically disabled.  Moreover, the Jamba
16  Juice Defendants have the financial resources to remove these barriers from the
17  Jamba Juice Facility (without much difficulty or expense), and make the Jamba
18  Juice Facility accessible to the physically disabled.  To date, however, the Jamba
19  Juice Defendants refuse to either remove those barriers or seek an unreasonable
20  hardship exemption to excuse non-compliance.

21       46.    At all relevant times, the Jamba Juice Defendants have possessed
22  and enjoyed sufficient control and authority to modify the Jamba Juice Facility to
23  remove impediments to wheelchair access and to comply with the Americans
24  with Disabilities Act Accessibility Guidelines and Title 24 regulations.  The
25  Jamba Juice Defendants have not removed such impediments and have not
26  modified the Jamba Juice Facility to conform to accessibility standards.  The

27
28  [1]  E.g., *Gunther v.Lin*, 144 Cal.App.4th 223, fn. 6
    [2]  Id.; 28 C.F.R. § 36.211(b)
    *Hubbard v. C.V. Center, Inc., et al.*
    Plaintiff's Complaint
                                Page 15

1  Jamba Juice Defendants have intentionally maintained the Jamba Juice Facility
2  in its current condition and have intentionally refrained from altering the Jamba
3  Juice Facility so that it complies with the accessibility standards.

4       47.    Hubbard further alleges that the (continued) presence of barriers at
5  the Jamba Juice Facility is so obvious as to establish the Jamba Juice
6  Defendants' discriminatory intent.[3]  On information and belief, Hubbard avers
7  that evidence of the discriminatory intent includes the Jamba Juice Defendants'
8  refusal to adhere to relevant building standards; disregard for the building plans
9  and permits issued for the Jamba Juice Facility; conscientious decision to the
10 architectural layout (as it currently exists) at the Jamba Juice Facility; decision
11 not to remove barriers from the Jamba Juice Facility; and allowance that the
12 Jamba Juice Facility continues to exist in its non-compliant state.  Hubbard
13 further alleges, on information and belief, that the Jamba Juice Defendants are
14 not in the midst of a remodel, and that the barriers present at the Jamba Juice
15 Facility are not isolated (or temporary) interruptions in access due to
16 maintenance or repairs.[4]

17      48.    The Pizzeria Uno Defendants knew that these elements and areas of
18 the Pizzeria Uno Facility were inaccessible, violate state and federal law, and
19 interfere with (or deny) access to the physically disabled.  Moreover, the Pizzeria
20 Uno Defendants have the financial resources to remove these barriers from the
21 Pizzeria Uno Facility (without much difficulty or expense), and make the
22 Pizzeria Uno Facility accessible to the physically disabled.  To date, however,
23 the Pizzeria Uno Defendants refuse to either remove those barriers or seek an
24 unreasonable hardship exemption to excuse non-compliance.

25      49.    At all relevant times, the Pizzeria Uno Defendants have possessed
26 and enjoyed sufficient control and authority to modify the Pizzeria Uno Facility

27

28
[3]    E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
[4]    Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1  to remove impediments to wheelchair access and to comply with the Americans

2  with Disabilities Act Accessibility Guidelines and Title 24 regulations.  The

3  Pizzeria Uno Defendants have not removed such impediments and have not

4  modified the Pizzeria Uno Facility to conform to accessibility standards.  The

5  Pizzeria Uno Defendants have intentionally maintained the Pizzeria Uno Facility

6  in its current condition and have intentionally refrained from altering the Pizzeria

7  Uno Facility so that it complies with the accessibility standards.

8      50.    Hubbard further alleges that the (continued) presence of barriers at

9  the Pizzeria Uno Facility is so obvious as to establish the Pizzeria Uno

10  Defendants' discriminatory intent.[5]  On information and belief, Hubbard avers

11  that evidence of the discriminatory intent includes the Pizzeria Uno Defendants'

12  refusal to adhere to relevant building standards; disregard for the building plans

13  and permits issued for the Pizzeria Uno Facility; conscientious decision to the

14  architectural layout (as it currently exists) at the Pizzeria Uno Facility; decision

15  not to remove barriers from the Pizzeria Uno Facility; and allowance that the

16  Pizzeria Uno Facility continues to exist in its non-compliant state.  Hubbard

17  further alleges, on information and belief, that the Pizzeria Uno Defendants are

18  not in the midst of a remodel, and that the barriers present at the Pizzeria Uno

19  Facility are not isolated (or temporary) interruptions in access due to

20  maintenance or repairs.[6]

21      51.    The Mervyn's Defendants knew that these elements and areas of the

22  Mervyn's Facility were inaccessible, violate state and federal law, and interfere

23  with (or deny) access to the physically disabled.  Moreover, the Mervyn's

24  Defendants have the financial resources to remove these barriers from the

25  Mervyn's Facility (without much difficulty or expense), and make the facility

26  accessible to the physically disabled.  To date, however, the Mervyn's

27

28    [5]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
     [6]   Id.; 28 C.F.R. § 36.211(b)
    *Hubbard v. C.V. Center, Inc., et al.*
    Plaintiff's Complaint

1    Defendants refuse to either remove those barriers or seek an unreasonable

2    hardship exemption to excuse non-compliance.

3        52.    At all relevant times, the Mervyn's Defendants have possessed and

4    enjoyed sufficient control and authority to modify the Mervyn's Facility to

5    remove impediments to wheelchair access and to comply with the Americans

6    with Disabilities Act Accessibility Guidelines and Title 24 regulations.   The

7    Mervyn's Defendants have not removed such impediments and have not

8    modified the Mervyn's Facility to conform to accessibility standards.   The

9    Mervyn's Defendants have intentionally maintained the Mervyn's Facility in its

10   current condition and have intentionally refrained from altering the Mervyn's

11   Facility so that it complies with the accessibility standards.

12       53.    Hubbard further alleges that the (continued) presence of barriers at

13   the Mervyn's Facility is so obvious as to establish the Mervyn's Defendants'

14   discriminatory intent.[7]   On information and belief, Hubbard avers that evidence

15   of the discriminatory intent includes the Mervyn's Defendants' refusal to adhere

16   to relevant building standards; disregard for the building plans and permits

17   issued for the Mervyn's Facility; conscientious decision to the architectural

18   layout (as it currently exists) at the Mervyn's Facility; decision not to remove

19   barriers from the Mervyn's Facility; and allowance that the Mervyn's Facility

20   continues to exist in its non-compliant state.   Hubbard further alleges, on

21   information and belief, that the Mervyn's Defendants are not in the midst of a

22   remodel, and that the barriers present at the Mervyn's Facility are not isolated (or

23   temporary) interruptions in access due to maintenance or repairs.[8]

24       54.    The Starbucks Defendants knew that these elements and areas of the

25   Starbucks Facility were inaccessible, violate state and federal law, and interfere

26   with (or deny) access to the physically disabled.   Moreover, the Starbucks

27

28   [7]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
     [8]   Id.; 28 C.F.R. § 36.211(b)
     *Hubbard v. C.V. Center, Inc., et al.*
     Plaintiff's Complaint

                                    Page 18

1  Defendants have the financial resources to remove these barriers from the
2  Starbucks Facility (without much difficulty or expense), and make the Starbucks
3  Facility accessible to the physically disabled. To date, however, the Starbucks
4  Defendants refuse to either remove those barriers or seek an unreasonable
5  hardship exemption to excuse non-compliance.

6      55.    At all relevant times, the Starbucks Defendants have possessed and
7  enjoyed sufficient control and authority to modify the Starbucks Facility to
8  remove impediments to wheelchair access and to comply with the Americans
9  with Disabilities Act Accessibility Guidelines and Title 24 regulations. The
10  Starbucks Defendants have not removed such impediments and have not
11  modified the Starbucks Facility to conform to accessibility standards. The
12  Starbucks Defendants have intentionally maintained the Starbucks Facility in its
13  current condition and have intentionally refrained from altering the Starbucks
14  Facility so that it complies with the accessibility standards.

15      56.    Hubbard further alleges that the (continued) presence of barriers at
16  the facility is so obvious as to establish the Starbucks Defendants' discriminatory
17  intent.[9]    On information and belief, Hubbard avers that evidence of the
18  discriminatory intent includes the Starbucks Defendants' refusal to adhere to
19  relevant building standards; disregard for the building plans and permits issued
20  for the Starbucks Facility; conscientious decision to the architectural layout (as it
21  currently exists) at the Starbucks Facility; decision not to remove barriers from
22  the Starbucks Facility; and allowance that the Starbucks Facility continues to
23  exist in its non-compliant state. Hubbard further alleges, on information and
24  belief, that the Starbucks Defendants are not in the midst of a remodel, and that
25  the barriers present at the Starbucks Facility are not isolated (or temporary)
26  interruptions in access due to maintenance or repairs.[10]

27

28
[9]    E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
[10]   Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

Page 19

1    57.    The JCPenney Defendants knew that these elements and areas of the
2 JCPenney Facility were inaccessible, violate state and federal law, and interfere
3 with (or deny) access to the physically disabled.    Moreover, the JCPenney
4 Defendants have the financial resources to remove these barriers from the
5 JCPenney Facility (without much difficulty or expense), and make the JCPenney
6 Facility accessible to the physically disabled.    To date, however, the JCPenney
7 Defendants refuse to either remove those barriers or seek an unreasonable
8 hardship exemption to excuse non-compliance.

9    58.    At all relevant times, the JCPenney Defendants have possessed and
10 enjoyed sufficient control and authority to modify the JCPenney Facility to
11 remove impediments to wheelchair access and to comply with the Americans
12 with Disabilities Act Accessibility Guidelines and Title 24 regulations.    The
13 JCPenney Defendants have not removed such impediments and have not
14 modified the JCPenney Facility to conform to accessibility standards.    The
15 JCPenney Defendants have intentionally maintained the JCPenney Facility in its
16 current condition and have intentionally refrained from altering the JCPenney
17 Facility so that it complies with the accessibility standards.

18    59.    Hubbard further alleges that the (continued) presence of barriers at
19 the facility is so obvious as to establish the JCPenney Defendants' discriminatory
20 intent.[11]    On information and belief, Hubbard avers that evidence of the
21 discriminatory intent includes the JCPenney Defendants' refusal to adhere to
22 relevant building standards; disregard for the building plans and permits issued
23 for the JCPenney Facility; conscientious decision to the architectural layout (as it
24 currently exists) at the JCPenney Facility; decision not to remove barriers from
25 the JCPenney Facility; and allowance that the JCPenney Facility continues to
26 exist in its non-compliant state.    Hubbard further alleges, on information and

27

28

---

[11]    E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1  belief, that the JCPenney Defendants are not in the midst of a remodel, and that
2  the barriers present at the JCPenney Facility are not isolated (or temporary)
3  interruptions in access due to maintenance or repairs.[12]

4      60.    The Subway Defendants knew that these elements and areas of the
5  Subway Facility were inaccessible, violate state and federal law, and interfere
6  with (or deny) access to the physically disabled.    Moreover, the Subway
7  Defendants have the financial resources to remove these barriers from the
8  Subway Facility (without much difficulty or expense), and make the Subway
9  Facility accessible to the physically disabled.    To date, however, the Subway
10  Defendants refuse to either remove those barriers or seek an unreasonable
11  hardship exemption to excuse non-compliance.

12      61.    At all relevant times, the Subway Defendants have possessed and
13  enjoyed sufficient control and authority to modify the Subway Facility to remove
14  impediments to wheelchair access and to comply with the Americans with
15  Disabilities Act Accessibility Guidelines and Title 24 regulations.    The Subway
16  Defendants have not removed such impediments and have not modified the
17  Subway Facility to conform to accessibility standards.    The Subway Defendants
18  have intentionally maintained the Subway Facility in its current condition and
19  have intentionally refrained from altering the Subway Facility property so that it
20  complies with the accessibility standards.

21      62.    Hubbard further alleges that the (continued) presence of barriers at
22  the Subway Facility is so obvious as to establish the Subway Defendants'
23  discriminatory intent.[13]    On information and belief, Hubbard avers that evidence
24  of the discriminatory intent includes the Subway Defendants' refusal to adhere to
25  relevant building standards; disregard for the building plans and permits issued
26  for the Subway Facility; conscientious decision to the architectural layout (as it

27  _____

28  [12] Id.; 28 C.F.R. § 36.211(b)
   [13] E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
   *Hubbard v. C.V. Center, Inc., et al.*
   Plaintiff's Complaint

                            Page 21

1  currently exists) at the Subway Facility; decision not to remove barriers the
2  Subway Facility; and allowance that the Subway Facility continues to exist in its
3  non-compliant state. Hubbard further alleges, on information and belief, that the
4  Subway Defendants are not in the midst of a remodel, and that the barriers
5  present at the Subway Facility are not isolated (or temporary) interruptions in
6  access due to maintenance or repairs.[14]

7  63.  The Panera Bread Defendants knew that these elements and areas of
8  the Panera Bread Facility were inaccessible, violate state and federal law, and
9  interfere with (or deny) access to the physically disabled. Moreover, the Panera
10  Bread Defendants have the financial resources to remove these barriers from the
11  Panera Bread Facility (without much difficulty or expense), and make the Panera
12  Bread Facility accessible to the physically disabled. To date, however, the
13  Panera Bread Defendants refuse to either remove those barriers or seek an
14  unreasonable hardship exemption to excuse non-compliance.

15  64.  At all relevant times, the Panera Bread Defendants have possessed
16  and enjoyed sufficient control and authority to modify the Subway Facility to
17  remove impediments to wheelchair access and to comply with the Americans
18  with Disabilities Act Accessibility Guidelines and Title 24 regulations. The
19  Panera Bread Defendants have not removed such impediments and have not
20  modified the Panera Bread Facility to conform to accessibility standards. The
21  Panera Bread Defendants have intentionally maintained the Panera Bread
22  Facility in its current condition and have intentionally refrained from altering the
23  Panera Bread Facility property so that it complies with the accessibility
24  standards.

25  65.  Hubbard further alleges that the (continued) presence of barriers at
26  the Panera Bread Facility is so obvious as to establish the Panera Bread

27

28

---

[14]  Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1  Defendants' discriminatory intent.[15]   On information and belief, Hubbard avers

2  that evidence of the discriminatory intent includes the Panera Bread Defendants'

3  refusal to adhere to relevant building standards; disregard for the building plans

4  and permits issued for the Panera Bread Facility; conscientious decision to the

5  architectural layout (as it currently exists) at the Panera Bread Facility; decision

6  not to remove barriers the Panera Bread Facility; and allowance that the Panera

7  Bread Facility continues to exist in its non-compliant state.   Hubbard further

8  alleges, on information and belief, that the Panera Bread Defendants are not in

9  the midst of a remodel, and that the barriers present at the Panera Bread Facility

10  are not isolated (or temporary) interruptions in access due to maintenance or

11  repairs.[16]

12                              VI. FIRST CLAIM

13                  **Americans with Disabilities Act of 1990**

14                  Denial of "Full and Equal" Enjoyment and Use

15                  (The Chula Vista Center Common Area Facility)

16         66.    Hubbard incorporates the allegations contained in paragraphs 1

17  through 65 for her claim.

18         67.    Title III of the ADA holds as a "general rule" that no individual

19  shall be discriminated against on the basis of disability in the full and equal

20  enjoyment (or use) of goods, services, facilities, privileges, and accommodations

21  offered by any person who owns, operates, or leases a place of public

22  accommodation. 42 U.S.C. § 12182(a).

23         68.    The Chula Vista Center Defendant discriminated against Hubbard

24  by denying "full and equal enjoyment" and use of the goods, services, facilities,

25  privileges or accommodations of the Chula Vista Center Common Area Facility

26  during each visit and each incident of deterrence.

27

28  ---

[15]    E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
[16]    Id.; 28 C.F.R. § 36.211(b)
*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1 <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

2     69.    The ADA specifically prohibits failing to remove architectural
3 barriers, which are structural in nature, in existing facilities where such removal
4 is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily
5 achievable" is defined as "easily accomplishable and able to be carried out
6 without much difficulty or expense." <u>Id.</u> § 12181(9).

7     70.    When an entity can demonstrate that removal of a barrier is not
8 readily achievable, a failure to make goods, services, facilities, or
9 accommodations available through alternative methods is also specifically
10 prohibited if these methods are readily achievable. <u>Id.</u> § 12182(b)(2)(A)(v).

11     71.    Here, Hubbard alleges that the Chula Vista Center Defendant can
12 easily remove the architectural barriers at the Chula Vista Center Common Area
13 Facility without much difficulty or expense, and that the Chula Vista Center
14 Defendant violated the ADA by failing to remove those barriers, when it was
15 readily achievable to do so.

16     72.    In the alternative, if it was not "readily achievable" for the Chula
17 Vista Center Defendant to remove the Chula Vista Center Common Area
18 Facility's barriers, then the Chula Vista Center Defendant violated the ADA by
19 failing to make the required services available through alternative methods,
20 which are readily achievable.

21 <u>Failure to Design and Construct an Accessible Facility</u>

22     73.    On information and belief, the Chula Vista Center Common Area
23 Facility was designed or constructed (or both) after January 26, 1992—
24 independently triggering access requirements under Title III of the ADA.

25     74.    The ADA also prohibits designing and constructing facilities for
26 first occupancy after January 26, 1993, that aren't readily accessible to, and
27 usable by, individuals with disabilities when it was structurally practicable to do
28 so. 42 U.S.C. § 12183(a)(1).

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

75.    Here, the Chula Vista Center Defendant violated the ADA by designing or constructing (or both) the Chula Vista Center Common Area Facility in a manner that was not readily accessible to the physically disabled public—including Hubbard—when it was structurally practical to do so.[17]

### Failure to Make an Altered Facility Accessible

76.    On information and belief, the Chula Vista Center Common Area Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

77.    The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

78.    Here, the Chula Vista Center Defendant altered the Chula Vista Center Common Area Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Hubbard—to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

79.    The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

80.    Here, the Chula Vista Center Defendant violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the

---

[17] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1   Chula Vista Center Common Area Facility, when these modifications were
2   necessary to afford (and would not fundamentally alter the nature of) these
3   goods, services, facilities, or accommodations.

4        81.    Hubbard seeks all relief available under the ADA (*i.e.*, injunctive
5   relief, attorney fees, costs, legal expense) for these aforementioned violations. 42
6   U.S.C. § 12205.

7        82.    Hubbard also seeks a finding from this Court (*i.e.,* declaratory
8   relief) that the Chula Vista Center Defendant violated the ADA in order to
9   pursue damages under California's Unruh Civil Rights Act or Disabled Persons
10  Act.

11                          VII. SECOND CLAIM

12                          **Disabled Persons Act**

13                  (The Chula Vista Center Common Area Facility)

14       83.    Hubbard incorporates the allegations contained in paragraphs 1
15  through 82 for her claim.

16       84.    California Civil Code § 54 states, in part, that: Individuals with
17  disabilities have the same right as the general public to the full and free use of
18  the streets, sidewalks, walkways, public buildings and facilities, and other public
19  places.

20       85.    California Civil Code § 54.1 also states, in part, that: Individuals
21  with disabilities shall be entitled to full and equal access to accommodations,
22  facilities, telephone facilities, places of public accommodation, and other places
23  to which the general public is invited.

24       86.    Both sections specifically incorporate (by reference) an individual's
25  rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

26       87.    Here, the Chula Vista Center Defendant discriminated against the
27  physically disabled public—including Hubbard—by denying them full and equal
28  access to the Chula Vista Center Common Area Facility.   The Chula Vista

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1    Center Defendant also violated Hubbard's rights under the ADA, and, therefore,

2    infringed upon or violated (or both) Hubbard's rights under the Disabled Persons

3    Act.

4        88.    <u>For each offense</u> of the Disabled Persons Act, Hubbard seeks actual

5    damages (both general and special damages), statutory minimum damages of one

6    thousand dollars ($1,000), declaratory relief, and any other remedy available

7    under California Civil Code § 54.3.

8        89.    He also seeks to enjoin the Chula Vista Center Defendant from

9    violating the Disabled Persons Act (and ADA) under California Civil Code § 55,

10   and to recover reasonable attorneys' fees and incurred under California Civil

11   Code §§ 54.3 and 55.

12   <div align="center">VIII. THIRD CLAIM</div>

13   <div align="center">**Unruh Civil Rights Act**</div>

14   <div align="center">(The Chula Vista Center Common Area Facility)</div>

15       90.    Hubbard incorporates the allegations contained in paragraphs 1

16   through 89 for her claim.

17       91.    California Civil Code § 51 states, in part, that: All persons within

18   the jurisdiction of this state are entitled to the full and equal accommodations,

19   advantages, facilities, privileges, or services in all business establishments of

20   every kind whatsoever.

21       92.    California Civil Code § 51.5 also states, in part, that: No business

22   establishment of any kind whatsoever shall discriminate against any person in

23   this state because of the disability of the person.

24       93.    California Civil Code § 51(f) specifically incorporates (by

25   reference) an individual's rights under the ADA into the Unruh Act.

26       94.    The Chula Vista Center Defendant's aforementioned acts and

27   omissions denied the physically disabled public—including Hubbard—full and

28

1  equal accommodations, advantages, facilities, privileges and services in a

2  business establishment (because of their physical disability).

3      95.    These acts and omissions (including the ones that violate the ADA)

4  denied, aided or incited a denial, or discriminated against Hubbard by violating

5  the Unruh Act.

6      96.    Hubbard was damaged by the Chula Vista Center Defendant's

7  wrongful conduct, and seeks statutory minimum damages of four thousand

8  dollars ($4,000) for each offense.

9      97.    Hubbard also seeks to enjoin the Chula Vista Center Defendant

10  from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees

11  and costs incurred under California Civil Code § 52(a).

## IX. FOURTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Chula Vista Center Common Area Facility)

15      98.    Hubbard incorporates the allegations contained in paragraphs 1

16  through 97 for this claim.

17      99.    Health and Safety Code § 19955(a) states, in part, that: California

18  public accommodations or facilities (built with private funds) shall adhere to the

19  provisions of Government Code § 4450.

20      100.  Health and Safety Code § 19959 states, in part, that: Every existing

21  (non-exempt) public accommodation constructed prior to July 1, 1970, which is

22  altered or structurally repaired, is required to comply with this chapter.

23      101.  Hubbard alleges the Chula Vista Center Common Area Facility is a

24  public accommodation constructed, altered, or repaired in a manner that violates

25  Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both),

26  and that the Chula Vista Center Common Area Facility was not exempt under

27  Health and Safety Code § 19956.

28

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

102. The Chula Vista Center Defendant's non-compliance with these requirements at the Chula Vista Center Common Area Facility aggrieved (or potentially aggrieved) Hubbard and other persons with physical disabilities. Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## X. FIFTH CLAIM

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

(The Jamba Juice Facility)

103. Hubbard incorporates the allegations contained in paragraphs 1 through 102 for this claim.

104. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

105. The Jamba Juice Defendants' discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Jamba Juice Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

106. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

107. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1  accommodations available through alternative methods is also specifically

2  prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

3      108.  Here, Hubbard alleges that the Jamba Juice Defendants can easily

4  remove the architectural barriers at the Jamba Juice Facility without much

5  difficulty or expense, and that the Jamba Juice Defendants violated the ADA by

6  failing to remove those barriers, when it was readily achievable to do so.

7      109.  In the alternative, if it was not "readily achievable" for the Jamba

8  Juice Defendants to remove the Jamba Juice Facility's barriers, then the Jamba

9  Juice Defendants violated the ADA by failing to make the required services

10  available through alternative methods, which are readily achievable.

11              Failure to Design and Construct an Accessible Facility

12      110.  On information and belief, the Jamba Juice Facility was designed or

13  constructed (or both) after January 26, 1992—independently triggering access

14  requirements under Title III of the ADA.

15      111.  The ADA also prohibits designing and constructing facilities for

16  first occupancy after January 26, 1993, that aren't readily accessible to, and

17  usable by, individuals with disabilities when it was structurally practicable to do

18  so. 42 U.S.C. § 12183(a)(1).

19      112.  Here, the Jamba Juice Defendants violated the ADA by designing or

20  constructing (or both) the Jamba Juice Facility in a manner that was not readily

21  accessible to the physically disabled public—including Hubbard—when it was

22  structurally practical to do so.[18]

23              Failure to Make an Altered Facility Accessible

24      113.  On information and belief, the Jamba Juice Facility was modified

25  after January 26, 1992, independently triggering access requirements under the

26  ADA.

27

28  [18] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
     private attorney general under either state or federal statutes.
     Hubbard v. C.V. Center, Inc., et al.
     Plaintiff's Complaint

1     114. The ADA also requires that facilities altered in a manner that affects

2 (or could affect) its usability must be made readily accessible to individuals with

3 disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering

4 an area that contains a facility's primary function also requires adding making

5 the paths of travel, bathrooms, telephones, and drinking fountains serving that

6 area accessible to the maximum extent feasible. Id.

7     115. Here, the Jamba Juice Defendants altered the Jamba Juice Facility in

8 a manner that violated the ADA and was not readily accessible to the physically

9 disabled public—including Hubbard—to the maximum extent feasible.

10 <div align="center">Failure to Modify Existing Policies and Procedures</div>

11     116. The ADA also requires reasonable modifications in policies,

12 practices, or procedures, when necessary to afford such goods, services,

13 facilities, or accommodations to individuals with disabilities, unless the entity

14 can demonstrate that making such modifications would fundamentally alter their

15 nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

16     117. Here, the Jamba Juice Defendants violated the ADA by failing to

17 make reasonable modifications in policies, practices, or procedures at the Jamba

18 Juice Facility, when these modifications were necessary to afford (and would not

19 fundamentally alter the nature of) these goods, services, facilities, or

20 accommodations.

21     118. Hubbard seeks all relief available under the ADA (i.e., injunctive

22 relief, attorney fees, costs, legal expense) for these aforementioned violations. 42

23 U.S.C. § 12205.

24     119. Hubbard also seeks a finding from this Court (i.e., declaratory

25 relief) that Applebee's violated the ADA in order to pursue damages under

26 California's Unruh Civil Rights Act or Disabled Persons Act.

27

28

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

# XI. SIXTH CLAIM

## Disabled Persons Act

### (The Jamba Juice Facility)

120. Hubbard incorporates the allegations contained in paragraphs 1 through 119 for this claim.

121. California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

122. California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

123. Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

124. Here, the Jamba Juice Defendants discriminated against the physically disabled public—including Hubbard—by denying them full and equal access to the Jamba Juice Facility. The Jamba Juice Defendants also violated Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or both) Hubbard's rights under the Disabled Persons Act.

125. For each offense of the Disabled Persons Act, Hubbard seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

126. He also seeks to enjoin the Jamba Juice Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

1  XII. SEVENTH CLAIM

2  **Unruh Civil Rights Act**

3  (The Jamba Juice Facility)

4  127.  Hubbard incorporates the allegations contained in paragraphs 1

5  through 126 for this claim.

6  128.  California Civil Code § 51 states, in part, that: All persons within

7  the jurisdiction of this state are entitled to the full and equal accommodations,

8  advantages, facilities, privileges, or services in all business establishments of

9  every kind whatsoever.

10  129.  California Civil Code § 51.5 also states, in part, that: No business

11  establishment of any kind whatsoever shall discriminate against any person in

12  this state because of the disability of the person.

13  130.  California Civil Code § 51(f) specifically incorporates (by

14  reference) an individual's rights under the ADA into the Unruh Act.

15  131.  The Jamba Juice Defendants' aforementioned acts and omissions

16  denied the physically disabled public—including Hubbard—full and equal

17  accommodations, advantages, facilities, privileges and services in a business

18  establishment (because of their physical disability).

19  132.  These acts and omissions (including the ones that violate the ADA)

20  denied, aided or incited a denial, or discriminated against Hubbard by violating

21  the Unruh Act.

22  133.  Hubbard was damaged by the Jamba Juice Defendants' wrongful

23  conduct, and seeks statutory minimum damages of four thousand dollars

24  ($4,000) <u>for each offense</u>.

25  134.  Hubbard also seeks to enjoin the Jamba Juice Defendants from

26  violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and

27  costs incurred under California Civil Code § 52(a).

28

## XIII. EIGHTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Jamba Juice Facility)

135.  Hubbard incorporates the allegations contained in paragraphs 1 through 134 for this claim.

136.  Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

137.  Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

138.  Hubbard alleges the Jamba Juice Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Jamba Juice Facility was not exempt under Health and Safety Code § 19956.

139.  The Jamba Juice Defendants' non-compliance with these requirements at the Jamba Juice Facility aggrieved (or potentially aggrieved) Hubbard and other persons with physical disabilities.  Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XIV. NINTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Pizzeria Uno Facility)

140.  Hubbard incorporates the allegations contained in paragraphs 1 through 139 for this claim.

141.  Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1    offered by any person who owns, operates, or leases a place of public

2    accommodation. 42 U.S.C. § 12182(a).

3        142.  The Pizzeria Uno Defendants discriminated against Hubbard by

4    denying "full and equal enjoyment" and use of the goods, services, facilities,

5    privileges or accommodations of the Pizzeria Uno Facility during each visit and

6    each incident of deterrence.

7            Failure to Remove Architectural Barriers in an Existing Facility

8        143.  The ADA specifically prohibits failing to remove architectural

9    barriers, which are structural in nature, in existing facilities where such removal

10   is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).  The term "readily

11   achievable" is defined as "easily accomplishable and able to be carried out

12   without much difficulty or expense." Id. § 12181(9).

13       144.  When an entity can demonstrate that removal of a barrier is not

14   readily achievable, a failure to make goods, services, facilities, or

15   accommodations available through alternative methods is also specifically

16   prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

17       145.  Here, Hubbard alleges that the Pizzeria Uno Defendants can easily

18   remove the architectural barriers at the Pizzeria Uno Facility without much

19   difficulty or expense, and that the Pizzeria Uno Defendants violated the ADA by

20   failing to remove those barriers, when it was readily achievable to do so.

21       146.  In the alternative, if it was not "readily achievable" for the Pizzeria

22   Uno Defendants to remove the Pizzeria Uno Facility's barriers, then the Pizzeria

23   Uno Defendants violated the ADA by failing to make the required services

24   available through alternative methods, which are readily achievable.

25           Failure to Design and Construct an Accessible Facility

26       147.  On information and belief, the Pizzeria Uno Facility was designed

27   or constructed (or both) after January 26, 1992—independently triggering access

28   requirements under Title III of the ADA.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1    148.  The ADA also prohibits designing and constructing facilities for

2  first occupancy after January 26, 1993, that aren't readily accessible to, and

3  usable by, individuals with disabilities when it was structurally practicable to do

4  so. 42 U.S.C. § 12183(a)(1).

5    149.  Here, the Pizzeria Uno Defendants violated the ADA by designing

6  or constructing (or both) the Pizzeria Uno Facility in a manner that was not

7  readily accessible to the physically disabled public—including Hubbard—when

8  it was structurally practical to do so.[19]

9             Failure to Make an Altered Facility Accessible

10    150.  On information and belief, the Pizzeria Uno Facility was modified

11  after January 26, 1992, independently triggering access requirements under the

12  ADA.

13    151.  The ADA also requires that facilities altered in a manner that affects

14  (or could affect) its usability must be made readily accessible to individuals with

15  disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering

16  an area that contains a facility's primary function also requires adding making

17  the paths of travel, bathrooms, telephones, and drinking fountains serving that

18  area accessible to the maximum extent feasible. Id.

19    152.  Here, the Pizzeria Uno Defendants altered the Pizzeria Uno Facility

20  in a manner that violated the ADA and was not readily accessible to the

21  physically disabled public—including Hubbard—to the maximum extent

22  feasible.

23          Failure to Modify Existing Policies and Procedures

24    153.  The ADA also requires reasonable modifications in policies,

25  practices, or procedures, when necessary to afford such goods, services,

26  facilities, or accommodations to individuals with disabilities, unless the entity

27

28  [19] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
private attorney general under either state or federal statutes.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1  can demonstrate that making such modifications would fundamentally alter their

2  nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

3      154.  Here, the Pizzeria Uno Defendants violated the ADA by failing to

4  make reasonable modifications in policies, practices, or procedures at the

5  Pizzeria Uno Facility, when these modifications were necessary to afford (and

6  would not fundamentally alter the nature of) these goods, services, facilities, or

7  accommodations.

8      155.  Hubbard seeks all relief available under the ADA (*i.e.*, injunctive

9  relief, attorney fees, costs, legal expense) for these aforementioned violations. 42

10  U.S.C. § 12205.

11      156.  Hubbard also seeks a finding from this Court (*i.e.,* declaratory

12  relief) that the Pizzeria Uno Defendants violated the ADA in order to pursue

13  damages under California's Unruh Civil Rights Act or Disabled Persons Act.

14                          XV. TENTH CLAIM

15                          **Disabled Persons Act**

16                          (The Pizzeria Uno Facility)

17      157.  Hubbard incorporates the allegations contained in paragraphs 1

18  through 156 for this claim.

19      158.  California Civil Code § 54 states, in part, that: Individuals with

20  disabilities have the same right as the general public to the full and free use of

21  the streets, sidewalks, walkways, public buildings and facilities, and other public

22  places.

23      159.  California Civil Code § 54.1 also states, in part, that: Individuals

24  with disabilities shall be entitled to full and equal access to accommodations,

25  facilities, telephone facilities, places of public accommodation, and other places

26  to which the general public is invited.

27      160.  Both sections specifically incorporate (by reference) an individual's

28  rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1    161. Here, the Pizzeria Uno Defendants discriminated against the

2    physically disabled public—including Hubbard—by denying them full and equal

3    access to the Pizzeria Uno Facility. The Pizzeria Uno Defendants also violated

4    Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or

5    both) Hubbard's rights under the Disabled Persons Act.

6    162. For each offense of the Disabled Persons Act, Hubbard seeks actual

7    damages (both general and special damages), statutory minimum damages of one

8    thousand dollars ($1,000), declaratory relief, and any other remedy available

9    under California Civil Code § 54.3.

10    163. She also seeks to enjoin the Pizzeria Uno Defendants from violating

11    the Disabled Persons Act (and ADA) under California Civil Code § 55, and to

12    recover reasonable attorneys' fees and incurred under California Civil Code §§

13    54.3 and 55.

14                          XVI. ELEVENTH CLAIM

15                          **Unruh Civil Rights Act**

16                          (The Pizzeria Uno Facility)

17    164. Hubbard incorporates the allegations contained in paragraphs 1

18    through 163 for this claim.

19    165. California Civil Code § 51 states, in part, that: All persons within

20    the jurisdiction of this state are entitled to the full and equal accommodations,

21    advantages, facilities, privileges, or services in all business establishments of

22    every kind whatsoever.

23    166. California Civil Code § 51.5 also states, in part, that: No business

24    establishment of any kind whatsoever shall discriminate against any person in

25    this state because of the disability of the person.

26    167. California Civil Code § 51(f) specifically incorporates (by

27    reference) an individual's rights under the ADA into the Unruh Act.

28

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

                          Page 38

1    168.  The Pizzeria Uno Defendants' aforementioned acts and omissions
2    denied the physically disabled public—including Hubbard—full and equal
3    accommodations, advantages, facilities, privileges and services in a business
4    establishment (because of their physical disability).

5    169.  These acts and omissions (including the ones that violate the ADA)
6    denied, aided or incited a denial, or discriminated against Hubbard by violating
7    the Unruh Act.

8    170.  Hubbard was damaged by the Pizzeria Uno Defendants' wrongful
9    conduct, and seeks statutory minimum damages of four thousand dollars
10   ($4,000) for each offense.

11   171.  Hubbard also seeks to enjoin the Pizzeria Uno Defendants from
12   violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and
13   costs incurred under California Civil Code § 52(a).

14                            XVII. TWELFTH CLAIM

15           **Denial of Full and Equal Access to Public Facilities**

16                          (The Pizzeria Uno Facility)

17   172.  Hubbard incorporates the allegations contained in paragraphs 1
18   through 171 for this claim.

19   173.  Health and Safety Code § 19955(a) states, in part, that: California
20   public accommodations or facilities (built with private funds) shall adhere to the
21   provisions of Government Code § 4450.

22   174.  Health and Safety Code § 19959 states, in part, that: Every existing
23   (non-exempt) public accommodation constructed prior to July 1, 1970, which is
24   altered or structurally repaired, is required to comply with this chapter.

25   175.  Hubbard  alleges  the  Pizzeria  Uno  Facility  is  a  public
26   accommodation constructed, altered, or repaired in a manner that violates Part
27   5.5 of the Health and Safety Code or Government Code § 4450 (or both), and

28

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1  that the Pizzeria Uno Facility was not exempt under Health and Safety Code §

2  19956.

3      176. The Pizzeria Uno Defendants' non-compliance with these

4  requirements at the Pizzeria Uno Facility aggrieved (or potentially aggrieved)

5  Hubbard and other persons with physical disabilities. Accordingly, she seeks

6  injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

7  <div align="center">XVIII. THIRTEENTH CLAIM</div>

8  <div align="center">**Americans with Disabilities Act of 1990**</div>

9  <div align="center">Denial of "Full and Equal" Enjoyment and Use</div>

10  <div align="center">(The Mervyn's Facility)</div>

11      177. Hubbard incorporates the allegations contained in paragraphs 1

12  through 176 for this claim.

13      178. Title III of the ADA holds as a "general rule" that no individual

14  shall be discriminated against on the basis of disability in the full and equal

15  enjoyment (or use) of goods, services, facilities, privileges, and accommodations

16  offered by any person who owns, operates, or leases a place of public

17  accommodation. 42 U.S.C. § 12182(a).

18      179. The Mervyn's Defendants discriminated against Hubbard by

19  denying "full and equal enjoyment" and use of the goods, services, facilities,

20  privileges or accommodations of the Mervyn's Facility during each visit and

21  each incident of deterrence.

22  <div align="center">Failure to Remove Architectural Barriers in an Existing Facility</div>

23      180. The ADA specifically prohibits failing to remove architectural

24  barriers, which are structural in nature, in existing facilities where such removal

25  is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily

26  achievable" is defined as "easily accomplishable and able to be carried out

27  without much difficulty or expense." Id. § 12181(9).

28

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

181.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

182.   Here, Hubbard alleges that the Mervyn's Defendants can easily remove the architectural barriers at the Mervyn's Facility without much difficulty or expense, and that the Mervyn's Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

183.   In the alternative, if it was not "readily achievable" for the Mervyn's Defendants to remove the Mervyn's Facility's barriers, then the Mervyn's Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

184.   On information and belief, the Mervyn's Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

185.   The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

186.   Here, the Mervyn's Defendants violated the ADA by designing or constructing (or both) the Mervyn's Facility in a manner that was not readily accessible to the physically disabled public—including Hubbard—when it was structurally practical to do so.[20]

---

[20]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

Hubbard v. C.V. Center, Inc., et al.
Plaintiff's Complaint

Page 41

1

<u>Failure to Make an Altered Facility Accessible</u>

2     187.   On information and belief, the Mervyn's Facility was modified after

3  January 26, 1992, independently triggering access requirements under the ADA.

4     188.   The ADA also requires that facilities altered in a manner that affects

5  (or could affect) its usability must be made readily accessible to individuals with

6  disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).   Altering

7  an area that contains a facility's primary function also requires adding making

8  the paths of travel, bathrooms, telephones, and drinking fountains serving that

9  area accessible to the maximum extent feasible. <u>Id.</u>

10     189.   Here, the Mervyn's Defendants altered the Mervyn's Facility in a

11  manner that violated the ADA and was not readily accessible to the physically

12  disabled public—including Hubbard—to the maximum extent feasible.

13

<u>Failure to Modify Existing Policies and Procedures</u>

14     190.   The ADA also requires reasonable modifications in policies,

15  practices, or procedures, when necessary to afford such goods, services,

16  facilities, or accommodations to individuals with disabilities, unless the entity

17  can demonstrate that making such modifications would fundamentally alter their

18  nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

19     191.   Here, the Mervyn's Defendants violated the ADA by failing to make

20  reasonable modifications in policies, practices, or procedures at the Mervyn's

21  Facility, when these modifications were necessary to afford (and would not

22  fundamentally alter the nature of) these goods, services, facilities, or

23  accommodations.

24     192.   Hubbard seeks all relief available under the ADA (<i>i.e.</i>, injunctive

25  relief, attorney fees, costs, legal expense) for these aforementioned violations. 42

26  U.S.C. § 12205.

27

28

<i>Hubbard v. C.V. Center, Inc., et al.</i>
Plaintiff's Complaint

Page 42

1    193.  Hubbard also seeks a finding from this Court (*i.e.,* declaratory

2  relief) that the Mervyn's Defendants violated the ADA in order to pursue

3  damages under California's Unruh Civil Rights Act or Disabled Persons Act.

4                          XIX. FOURTEENTH CLAIM

5                            **Disabled Persons Act**

6                            (The Mervyn's Facility)

7    194.  Hubbard incorporates the allegations contained in paragraphs 1

8  through 193 for this claim.

9    195.  California Civil Code § 54 states, in part, that: Individuals with

10  disabilities have the same right as the general public to the full and free use of

11  the streets, sidewalks, walkways, public buildings and facilities, and other public

12  places.

13    196.  California Civil Code § 54.1 also states, in part, that: Individuals

14  with disabilities shall be entitled to full and equal access to accommodations,

15  facilities, telephone facilities, places of public accommodation, and other places

16  to which the general public is invited.

17    197.  Both sections specifically incorporate (by reference) an individual's

18  rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

19    198.  Here, the Mervyn's Defendants discriminated against the physically

20  disabled public—including Hubbard—by denying them full and equal access to

21  the Mervyn's Facility.  The Mervyn's Defendants also violated Hubbard's rights

22  under the ADA, and, therefore, infringed upon or violated (or both) Hubbard's

23  rights under the Disabled Persons Act.

24    199.  For each offense of the Disabled Persons Act, Hubbard seeks actual

25  damages (both general and special damages), statutory minimum damages of one

26  thousand dollars ($1,000), declaratory relief, and any other remedy available

27  under California Civil Code § 54.3.

28

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1    200.  She also seeks to enjoin the Mervyn's Defendants from violating the
2    Disabled Persons Act (and ADA) under California Civil Code § 55, and to
3    recover reasonable attorneys' fees and incurred under California Civil Code §§
4    54.3 and 55.

5                            XX. FIFTEENTH CLAIM

6                            **Unruh Civil Rights Act**

7                            (The Mervyn's Facility)

8    201.  Hubbard incorporates the allegations contained in paragraphs 1
9    through 200 for this claim.

10    202.  California Civil Code § 51 states, in part, that: All persons within
11    the jurisdiction of this state are entitled to the full and equal accommodations,
12    advantages, facilities, privileges, or services in all business establishments of
13    every kind whatsoever.

14    203.  California Civil Code § 51.5 also states, in part, that: No business
15    establishment of any kind whatsoever shall discriminate against any person in
16    this state because of the disability of the person.

17    204.  California Civil Code § 51(f) specifically incorporates (by
18    reference) an individual's rights under the ADA into the Unruh Act.

19    205.  The Mervyn's Defendants' aforementioned acts and omissions
20    denied the physically disabled public—including Hubbard—full and equal
21    accommodations, advantages, facilities, privileges and services in a business
22    establishment (because of their physical disability).

23    206.  These acts and omissions (including the ones that violate the ADA)
24    denied, aided or incited a denial, or discriminated against Hubbard by violating
25    the Unruh Act.

26    207.  Hubbard was damaged by the Mervyn's Defendants' wrongful
27    conduct, and seeks statutory minimum damages of four thousand dollars
28    ($4,000) <u>for each offense</u>.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1    208. Hubbard also seeks to enjoin the Mervyn's Defendants from

2    violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and

3    costs incurred under California Civil Code § 52(a).

### XXI. SIXTEENTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Mervyn's Facility)

7    209. Hubbard incorporates the allegations contained in paragraphs 1

8    through 208 for this claim.

9    210. Health and Safety Code § 19955(a) states, in part, that: California

10   public accommodations or facilities (built with private funds) shall adhere to the

11   provisions of Government Code § 4450.

12   211. Health and Safety Code § 19959 states, in part, that: Every existing

13   (non-exempt) public accommodation constructed prior to July 1, 1970, which is

14   altered or structurally repaired, is required to comply with this chapter.

15   212. Hubbard alleges the Mervyn's Facility is a public accommodation

16   constructed, altered, or repaired in a manner that violates Part 5.5 of the Health

17   and Safety Code or Government Code § 4450 (or both), and that the Mervyn's

18   Facility was not exempt under Health and Safety Code § 19956.

19   213. The Mervyn's Defendants' non-compliance with these requirements

20   at the Mervyn's Facility aggrieved (or potentially aggrieved) Hubbard and other

21   persons with physical disabilities.  Accordingly, she seeks injunctive relief and

22   attorney fees pursuant to Health and Safety Code § 19953.

### XXII. SEVENTEENTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Starbucks Facility)

27   214. Hubbard incorporates the allegations contained in paragraphs 1

28   through 213 for this claim.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

215.  Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

216.  The Starbucks Defendants discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Starbucks Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

217.  The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).  The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

218.  When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

219.  Here, Hubbard alleges that the Starbucks Defendants can easily remove the architectural barriers at the Starbucks Facility without much difficulty or expense, and that Party City violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

220.  In the alternative, if it was not "readily achievable" for the Starbucks Defendants to remove the Starbucks Facility's barriers, then the Starbucks Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1

<u>Failure to Design and Construct an Accessible Facility</u>

2    221.  On information and belief, the Starbucks Facility was designed or

3  constructed (or both) after January 26, 1992—independently triggering access

4  requirements under Title III of the ADA.

5    222.  The ADA also prohibits designing and constructing facilities for

6  first occupancy after January 26, 1993, that aren't readily accessible to, and

7  usable by, individuals with disabilities when it was structurally practicable to do

8  so. 42 U.S.C. § 12183(a)(1).

9    223.  Here, the Starbucks Defendants violated the ADA by designing or

10  constructing (or both) the Starbucks Facility in a manner that was not readily

11  accessible to the physically disabled public—including Hubbard—when it was

12  structurally practical to do so.[21]

13

<u>Failure to Make an Altered Facility Accessible</u>

14    224.  On information and belief, the Starbucks Facility was modified after

15  January 26, 1992, independently triggering access requirements under the ADA.

16    225.  The ADA also requires that facilities altered in a manner that affects

17  (or could affect) its usability must be made readily accessible to individuals with

18  disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering

19  an area that contains a facility's primary function also requires adding making

20  the paths of travel, bathrooms, telephones, and drinking fountains serving that

21  area accessible to the maximum extent feasible. <u>Id.</u>

22    226.  Here, the Starbucks Defendants altered the Starbucks Facility in a

23  manner that violated the ADA and was not readily accessible to the physically

24  disabled public—including Hubbard—to the maximum extent feasible.

25

26

27

28

---

[21]  Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

<u>Failure to Modify Existing Policies and Procedures</u>

227.  The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

228.  Here, the Starbucks Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Starbucks Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

229.  Hubbard seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

230.  Hubbard also seeks a finding from this Court (*i.e.,* declaratory relief) that the Starbucks Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

<p align="center">XXIII. EIGHTEENTH CLAIM</p>

<p align="center">**Disabled Persons Act**</p>

<p align="center">(The Starbucks Facility)</p>

231.  Hubbard incorporates the allegations contained in paragraphs 1 through 230 for this claim.

232.  California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

233.  California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations,

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1   facilities, telephone facilities, places of public accommodation, and other places
2   to which the general public is invited.

3       234.   Both sections specifically incorporate (by reference) an individual's
4   rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

5       235.   Here, the Starbucks Defendants discriminated against the physically
6   disabled public—including Hubbard—by denying them full and equal access to
7   the Starbucks Facility. The Starbucks Defendants also violated Hubbard's rights
8   under the ADA, and, therefore, infringed upon or violated (or both) Hubbard's
9   rights under the Disabled Persons Act.

10      236.   For each offense of the Disabled Persons Act, Hubbard seeks actual
11  damages (both general and special damages), statutory minimum damages of one
12  thousand dollars ($1,000), declaratory relief, and any other remedy available
13  under California Civil Code § 54.3.

14      237.   He also seeks to enjoin the Starbucks Defendants from violating the
15  Disabled Persons Act (and ADA) under California Civil Code § 55, and to
16  recover reasonable attorneys' fees and incurred under California Civil Code §§
17  54.3 and 55.

18                      XXIV. NINETEENTH CLAIM
19                        **Unruh Civil Rights Act**
20                        (The Starbucks Facility)

21      238.   Hubbard incorporates the allegations contained in paragraphs 1
22  through 237 for this claim.

23      239.   California Civil Code § 51 states, in part, that: All persons within
24  the jurisdiction of this state are entitled to the full and equal accommodations,
25  advantages, facilities, privileges, or services in all business establishments of
26  every kind whatsoever.

27
28

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint
                        Page 49

240.  California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

241.  California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

242.  The Starbucks Defendants' aforementioned acts and omissions denied the physically disabled public—including Hubbard—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

243.  These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Hubbard by violating the Unruh Act.

244.  Hubbard was damaged by the Starbucks Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

245.  Hubbard also seeks to enjoin the Starbucks Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

<div align="center">

### XXV. TWENTIETH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Starbucks Facility)

</div>

246.  Hubbard incorporates the allegations contained in paragraphs 1 through 245 for this claim.

247.  Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

248.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

249.   Hubbard alleges the Starbucks Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Starbucks Facility was not exempt under Health and Safety Code § 19956.

250.   The Starbucks Defendants' non-compliance with these requirements at the Starbucks Facility aggrieved (or potentially aggrieved) Hubbard and other persons with physical disabilities.  Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XXVI. TWENTY-FIRST CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The JCPenney Facility)

251.   Hubbard incorporates the allegations contained in paragraphs 1 through 250 for this claim.

252.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

253.   The JCPenney Defendants discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the JCPenney Facility during each visit and each incident of deterrence.

1       Failure to Remove Architectural Barriers in an Existing Facility

2       254.  The ADA specifically prohibits failing to remove architectural

3   barriers, which are structural in nature, in existing facilities where such removal

4   is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).    The term "readily

5   achievable" is defined as "easily accomplishable and able to be carried out

6   without much difficulty or expense." Id. § 12181(9).

7       255.  When an entity can demonstrate that removal of a barrier is not

8   readily achievable, a failure to make goods, services, facilities, or

9   accommodations available through alternative methods is also specifically

10  prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

11      256.  Here, Hubbard alleges that the JCPenney Defendants can easily

12  remove the architectural barriers at the JCPenney Facility without much

13  difficulty or expense, and that Mervyn's violated the ADA by failing to remove

14  those barriers, when it was readily achievable to do so.

15      257.  In the alternative, if it was not "readily achievable" for the

16  JCPenney Defendants to remove the JCPenney Facility's barriers, then the

17  JCPenney Defendants violated the ADA by failing to make the required services

18  available through alternative methods, which are readily achievable.

19       Failure to Design and Construct an Accessible Facility

20      258.  On information and belief, the JCPenney Facility was designed or

21  constructed (or both) after January 26, 1992—independently triggering access

22  requirements under Title III of the ADA.

23      259.  The ADA also prohibits designing and constructing facilities for

24  first occupancy after January 26, 1993, that aren't readily accessible to, and

25  usable by, individuals with disabilities when it was structurally practicable to do

26  so. 42 U.S.C. § 12183(a)(1).

27      260.  Here, the JCPenney Defendants violated the ADA by designing or

28  constructing (or both) the JCPenney Facility in a manner that was not readily

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1 | accessible to the physically disabled public—including Hubbard—when it was

2 | structurally practical to do so.[22]

3 | <div align="center">Failure to Make an Altered Facility Accessible</div>

4 | 261. On information and belief, the JCPenney Facility was modified after

5 | January 26, 1992, independently triggering access requirements under the ADA.

6 | 262. The ADA also requires that facilities altered in a manner that affects

7 | (or could affect) its usability must be made readily accessible to individuals with

8 | disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering

9 | an area that contains a facility's primary function also requires adding making

10 | the paths of travel, bathrooms, telephones, and drinking fountains serving that

11 | area accessible to the maximum extent feasible. Id.

12 | 263. Here, the JCPenney Defendants altered the JCPenney Facility in a

13 | manner that violated the ADA and was not readily accessible to the physically

14 | disabled public—including Hubbard—to the maximum extent feasible.

15 | <div align="center">Failure to Modify Existing Policies and Procedures</div>

16 | 264. The ADA also requires reasonable modifications in policies,

17 | practices, or procedures, when necessary to afford such goods, services,

18 | facilities, or accommodations to individuals with disabilities, unless the entity

19 | can demonstrate that making such modifications would fundamentally alter their

20 | nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

21 | 265. Here, the JCPenney Defendants violated the ADA by failing to

22 | make reasonable modifications in policies, practices, or procedures at the

23 | JCPenney Facility, when these modifications were necessary to afford (and

24 | would not fundamentally alter the nature of) these goods, services, facilities, or

25 | accommodations.

---

[22] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

266.  Hubbard seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

267.  Hubbard also seeks a finding from this Court (*i.e.,* declaratory relief) that the JCPenney Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## XXVII. TWENTY-SECOND CLAIM

### Disabled Persons Act

(The JCPenney Facility)

268.  Hubbard incorporates the allegations contained in paragraphs 1 through 267 for this claim.

269.  California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

270.  California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

271.  Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

272.  Here, the JCPenney Defendants discriminated against the physically disabled public—including Hubbard—by denying them full and equal access to the JCPenney Facility.  The JCPenney Defendants also violated Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or both) Hubbard's rights under the Disabled Persons Act.

273.  For each offense of the Disabled Persons Act, Hubbard seeks actual damages (both general and special damages), statutory minimum damages of one

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1 thousand dollars ($1,000), declaratory relief, and any other remedy available
2 under California Civil Code § 54.3.

3     274.  She also seeks to enjoin the JCPenney Defendants from violating
4 the Disabled Persons Act (and ADA) under California Civil Code § 55, and to
5 recover reasonable attorneys' fees and incurred under California Civil Code §§
6 54.3 and 55.

7 <div align="center">XXVIII. TWENTY-THIRD CLAIM</div>

8 <div align="center">**Unruh Civil Rights Act**</div>

9 <div align="center">(The JCPenney Facility)</div>

10     275.  Hubbard incorporates the allegations contained in paragraphs 1
11 through 274 for this claim.

12     276.  California Civil Code § 51 states, in part, that: All persons within
13 the jurisdiction of this state are entitled to the full and equal accommodations,
14 advantages, facilities, privileges, or services in all business establishments of
15 every kind whatsoever.

16     277.  California Civil Code § 51.5 also states, in part, that: No business
17 establishment of any kind whatsoever shall discriminate against any person in
18 this state because of the disability of the person.

19     278.  California Civil Code § 51(f) specifically incorporates (by
20 reference) an individual's rights under the ADA into the Unruh Act.

21     279.  The JCPenney Defendants' aforementioned acts and omissions
22 denied the physically disabled public—including Hubbard—full and equal
23 accommodations, advantages, facilities, privileges and services in a business
24 establishment (because of their physical disability).

25     280.  These acts and omissions (including the ones that violate the ADA)
26 denied, aided or incited a denial, or discriminated against Hubbard by violating
27 the Unruh Act.

28

281.   Hubbard was damaged by the JCPenney Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

282.   Hubbard also seeks to enjoin the JCPenney Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

### XXIX. TWENTY-FOURTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The JCPenney Facility)

283.   Hubbard incorporates the allegations contained in paragraphs 1 through 282 for this claim.

284.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

285.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

286.   Hubbard alleges the JCPenney Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the JCPenney Facility was not exempt under Health and Safety Code § 19956.

287.   The JCPenney Defendants' non-compliance with these requirements at the JCPenney Facility aggrieved (or potentially aggrieved) Hubbard and other persons with physical disabilities.  Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

### XXX. TWENTY-FIFTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Subway Facility)

288.  Hubbard incorporates the allegations contained in paragraphs 1 through 287 for this claim.

289.  Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

290.  The Subway Defendants discriminated against Hubbard by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Subway Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

291.  The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).  The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

292.  When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

293.  Here, Hubbard alleges that the Subway Defendants can easily remove the architectural barriers at the Subway Facility without much difficulty

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1    or expense, and that the Subway Defendants violated the ADA by failing to
2    remove those barriers, when it was readily achievable to do so.

3        294.  In the alternative, if it was not "readily achievable" for the Subway
4    Defendants to remove the Subway Facility's barriers, then the Subway
5    Defendants violated the ADA by failing to make the required services available
6    through alternative methods, which are readily achievable.

7                    Failure to Design and Construct an Accessible Facility

8        295.  On information and belief, the Subway Facility was designed or
9    constructed (or both) after January 26, 1992—independently triggering access
10   requirements under Title III of the ADA.

11       296.  The ADA also prohibits designing and constructing facilities for
12   first occupancy after January 26, 1993, that aren't readily accessible to, and
13   usable by, individuals with disabilities when it was structurally practicable to do
14   so. 42 U.S.C. § 12183(a)(1).

15       297.  Here, the Subway Defendants violated the ADA by designing or
16   constructing (or both) the Subway Facility in a manner that was not readily
17   accessible to the physically disabled public—including Hubbard—when it was
18   structurally practical to do so.[23]

19                    Failure to Make an Altered Facility Accessible

20       298.  On information and belief, the Subway Facility was modified after
21   January 26, 1992, independently triggering access requirements under the ADA.

22       299.  The ADA also requires that facilities altered in a manner that affects
23   (or could affect) its usability must be made readily accessible to individuals with
24   disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering
25   an area that contains a facility's primary function also requires adding making

26

27

_____

28   [23]  Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
        private attorney general under either state or federal statutes.
     *Hubbard v. C.V. Center, Inc., et al.*
     Plaintiff's Complaint

                                    Page 58

1    the paths of travel, bathrooms, telephones, and drinking fountains serving that
2    area accessible to the maximum extent feasible. Id.

3        300.  Here, the Subway Defendants altered the Subway Facility in a
4    manner that violated the ADA and was not readily accessible to the physically
5    disabled public—including Hubbard—to the maximum extent feasible.

6                 Failure to Modify Existing Policies and Procedures

7        301.  The ADA also requires reasonable modifications in policies,
8    practices, or procedures, when necessary to afford such goods, services,
9    facilities, or accommodations to individuals with disabilities, unless the entity
10    can demonstrate that making such modifications would fundamentally alter their
11    nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

12        302.  Here, the Subway Defendants violated the ADA by failing to make
13    reasonable modifications in policies, practices, or procedures at the Subway
14    Facility, when these modifications were necessary to afford (and would not
15    fundamentally alter the nature of) these goods, services, facilities, or
16    accommodations.

17        303.  Hubbard seeks all relief available under the ADA (i.e., injunctive
18    relief, attorney fees, costs, legal expense) for these aforementioned violations. 42
19    U.S.C. § 12205.

20        304.  Hubbard also seeks a finding from this Court (i.e., declaratory
21    relief) that the Subway Defendants violated the ADA in order to pursue damages
22    under California's Unruh Civil Rights Act or Disabled Persons Act.

23                        XXXI. TWENTY-SIXTH CLAIM

24                            **Disabled Persons Act**

25                            (The Subway Facility)

26        305.  Hubbard incorporates the allegations contained in paragraphs 1
27    through 304 for this claim.

28

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

                            Page 59

1      306. California Civil Code § 54 states, in part, that: Individuals with

2 disabilities have the same right as the general public to the full and free use of

3 the streets, sidewalks, walkways, public buildings and facilities, and other public

4 places.

5      307. California Civil Code § 54.1 also states, in part, that: Individuals

6 with disabilities shall be entitled to full and equal access to accommodations,

7 facilities, telephone facilities, places of public accommodation, and other places

8 to which the general public is invited.

9      308. Both sections specifically incorporate (by reference) an individual's

10 rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

11      309. Here, the Subway Defendants discriminated against the physically

12 disabled public—including Hubbard—by denying them full and equal access to

13 the Subway Facility.  The Subway Defendants also violated Hubbard's rights

14 under the ADA, and, therefore, infringed upon or violated (or both) Hubbard's

15 rights under the Disabled Persons Act.

16      310. For each offense of the Disabled Persons Act, Hubbard seeks actual

17 damages (both general and special damages), statutory minimum damages of one

18 thousand dollars ($1,000), declaratory relief, and any other remedy available

19 under California Civil Code § 54.3.

20      311. She also seeks to enjoin the Subway Defendants from violating the

21 Disabled Persons Act (and ADA) under California Civil Code § 55, and to

22 recover reasonable attorneys' fees and incurred under California Civil Code §§

23 54.3 and 55.

24 <div align="center">XXXII. TWENTY-SEVENTH CLAIM</div>

25 <div align="center">**Unruh Civil Rights Act**</div>

26 <div align="center">(The Subway Facility)</div>

27      312. Hubbard incorporates the allegations contained in paragraphs 1

28 through 311 for this claim.

1    313.  California Civil Code § 51 states, in part, that: All persons within
2  the jurisdiction of this state are entitled to the full and equal accommodations,
3  advantages, facilities, privileges, or services in all business establishments of
4  every kind whatsoever.

5    314.  California Civil Code § 51.5 also states, in part, that: No business
6  establishment of any kind whatsoever shall discriminate against any person in
7  this state because of the disability of the person.

8    315.  California Civil Code § 51(f) specifically incorporates (by
9  reference) an individual's rights under the ADA into the Unruh Act.

10    316.  The Subway Defendants' aforementioned acts and omissions denied
11  the  physically  disabled  public—including  Hubbard—full  and  equal
12  accommodations, advantages, facilities, privileges and services in a business
13  establishment (because of their physical disability).

14    317.  These acts and omissions (including the ones that violate the ADA)
15  denied, aided or incited a denial, or discriminated against Hubbard by violating
16  the Unruh Act.

17    318.  Hubbard was damaged by the Subway Defendants' wrongful
18  conduct, and seeks statutory minimum damages of four thousand dollars
19  ($4,000) for each offense.

20    319.  Hubbard also seeks to enjoin the Subway Defendants from violating
21  the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs
22  incurred under California Civil Code § 52(a).

<div align="center">

XXXIII. TWENTY-EIGHTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Subway Facility)

</div>

26    320.  Hubbard incorporates the allegations contained in paragraphs 1
27  through 319 for this claim.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1    321.  Health and Safety Code § 19955(a) states, in part, that: California

2    public accommodations or facilities (built with private funds) shall adhere to the

3    provisions of Government Code § 4450.

4    322.  Health and Safety Code § 19959 states, in part, that: Every existing

5    (non-exempt) public accommodation constructed prior to July 1, 1970, which is

6    altered or structurally repaired, is required to comply with this chapter.

7    323.  Hubbard alleges the Subway Facility is a public accommodation

8    constructed, altered, or repaired in a manner that violates Part 5.5 of the Health

9    and Safety Code or Government Code § 4450 (or both), and that the Subway

10   Facility was not exempt under Health and Safety Code § 19956.

11   324.  The Subway Defendants' non-compliance with these requirements

12   at the Subway Facility aggrieved (or potentially aggrieved) Hubbard and other

13   persons with physical disabilities.  Accordingly, she seeks injunctive relief and

14   attorney fees pursuant to Health and Safety Code § 19953.

<div align="center">

XXXIV. TWENTY-NINTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Panera Bread Facility)

</div>

19   325.  Hubbard incorporates the allegations contained in paragraphs 1

20   through 324 for this claim.

21   326.  Title III of the ADA holds as a "general rule" that no individual

22   shall be discriminated against on the basis of disability in the full and equal

23   enjoyment (or use) of goods, services, facilities, privileges, and accommodations

24   offered by any person who owns, operates, or leases a place of public

25   accommodation. 42 U.S.C. § 12182(a).

26   327.  The Panera Bread Defendants discriminated against Hubbard by

27   denying "full and equal enjoyment" and use of the goods, services, facilities,

28

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1  privileges or accommodations of the Panera Bread Facility during each visit and

2  each incident of deterrence.

3       <u>Failure to Remove Architectural Barriers in an Existing Facility</u>

4     328. The ADA specifically prohibits failing to remove architectural

5  barriers, which are structural in nature, in existing facilities where such removal

6  is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily

7  achievable" is defined as "easily accomplishable and able to be carried out

8  without much difficulty or expense." <u>Id.</u> § 12181(9).

9     329. When an entity can demonstrate that removal of a barrier is not

10  readily achievable, a failure to make goods, services, facilities, or

11  accommodations available through alternative methods is also specifically

12  prohibited if these methods are readily achievable. <u>Id.</u> § 12182(b)(2)(A)(v).

13     330. Here, Hubbard alleges that the Panera Bread Defendants can easily

14  remove the architectural barriers at the Panera Bread Facility without much

15  difficulty or expense, and that the Panera Bread Defendants violated the ADA by

16  failing to remove those barriers, when it was readily achievable to do so.

17     331. In the alternative, if it was not "readily achievable" for the Panera

18  Bread Defendants to remove the Panera Bread Facility's barriers, then the Panera

19  Bread Defendants violated the ADA by failing to make the required services

20  available through alternative methods, which are readily achievable.

21       <u>Failure to Design and Construct an Accessible Facility</u>

22     332. On information and belief, the Panera Bread Facility was designed

23  or constructed (or both) after January 26, 1992—independently triggering access

24  requirements under Title III of the ADA.

25     333. The ADA also prohibits designing and constructing facilities for

26  first occupancy after January 26, 1993, that aren't readily accessible to, and

27  usable by, individuals with disabilities when it was structurally practicable to do

28  so. 42 U.S.C. § 12183(a)(1).

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

334.  Here, the Panera Bread Defendants violated the ADA by designing or constructing (or both) the Panera Bread Facility in a manner that was not readily accessible to the physically disabled public—including Hubbard—when it was structurally practical to do so.[24]

<div align="center">Failure to Make an Altered Facility Accessible</div>

335.  On information and belief, the Panera Bread Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

336.  The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

337.  Here, the Panera Bread Defendants altered the Panera Bread Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Hubbard—to the maximum extent feasible.

<div align="center">Failure to Modify Existing Policies and Procedures</div>

338.  The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

339.  Here, the Panera Bread Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Panera

---

[24]  Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

<div align="center">Page 64</div>

1  Bread Facility, when these modifications were necessary to afford (and would
2  not fundamentally alter the nature of) these goods, services, facilities, or
3  accommodations.

4      340.  Hubbard seeks all relief available under the ADA (*i.e.*, injunctive
5  relief, attorney fees, costs, legal expense) for these aforementioned violations. 42
6  U.S.C. § 12205.

7      341.  Hubbard also seeks a finding from this Court (*i.e.*, declaratory
8  relief) that the Panera Bread Defendants violated the ADA in order to pursue
9  damages under California's Unruh Civil Rights Act or Disabled Persons Act.

10                        XXXV. THIRTIETH CLAIM

11                          **Disabled Persons Act**

12                           (The Subway Facility)

13     342.  Hubbard incorporates the allegations contained in paragraphs 1
14  through 341 for this claim.

15     343.  California Civil Code § 54 states, in part, that: Individuals with
16  disabilities have the same right as the general public to the full and free use of
17  the streets, sidewalks, walkways, public buildings and facilities, and other public
18  places.

19     344.  California Civil Code § 54.1 also states, in part, that: Individuals
20  with disabilities shall be entitled to full and equal access to accommodations,
21  facilities, telephone facilities, places of public accommodation, and other places
22  to which the general public is invited.

23     345.  Both sections specifically incorporate (by reference) an individual's
24  rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

25     346.  Here, the Panera Bread Defendants discriminated against the
26  physically disabled public—including Hubbard—by denying them full and equal
27  access to the Panera Bread Facility.  The Panera Bread Defendants also violated

28

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

1  Hubbard's rights under the ADA, and, therefore, infringed upon or violated (or
2  both) Hubbard's rights under the Disabled Persons Act.

3      347.  <u>For each offense</u> of the Disabled Persons Act, Hubbard seeks actual
4  damages (both general and special damages), statutory minimum damages of one
5  thousand dollars ($1,000), declaratory relief, and any other remedy available
6  under California Civil Code § 54.3.

7      348.  She also seeks to enjoin the Panera Bread Defendants from violating
8  the Disabled Persons Act (and ADA) under California Civil Code § 55, and to
9  recover reasonable attorneys' fees and incurred under California Civil Code §§
10  54.3 and 55.

11                      XXXVI. THIRTY-FIRST CLAIM

12                        **Unruh Civil Rights Act**

13                        (The Panera Bread Facility)

14      349.  Hubbard incorporates the allegations contained in paragraphs 1
15  through 348 for this claim.

16      350.  California Civil Code § 51 states, in part, that: All persons within
17  the jurisdiction of this state are entitled to the full and equal accommodations,
18  advantages, facilities, privileges, or services in all business establishments of
19  every kind whatsoever.

20      351.  California Civil Code § 51.5 also states, in part, that: No business
21  establishment of any kind whatsoever shall discriminate against any person in
22  this state because of the disability of the person.

23      352.  California Civil Code § 51(f) specifically incorporates (by
24  reference) an individual's rights under the ADA into the Unruh Act.

25      353.  The Panera Bread Defendants' aforementioned acts and omissions
26  denied the physically disabled public—including Hubbard—full and equal
27  accommodations, advantages, facilities, privileges and services in a business
28  establishment (because of their physical disability).

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

354.  These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Hubbard by violating the Unruh Act.

355.  Hubbard was damaged by the Panera Bread Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

356.  Hubbard also seeks to enjoin the Panera Bread Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XXXVII. THIRTY-SECOND CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Panera Bread Facility)

357.  Hubbard incorporates the allegations contained in paragraphs 1 through 356 for this claim.

358.  Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

359.  Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

360.  Hubbard alleges the Panera Bread Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Panera Bread Facility was not exempt under Health and Safety Code § 19956.

361.  The Panera Bread Defendants' non-compliance with these requirements at the Panera Bread Facility aggrieved (or potentially aggrieved)

1  Hubbard and other persons with physical disabilities.  Accordingly, she seeks
2  injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

3  <center>XXXVIII. PRAYER FOR RELIEF</center>

4  WHEREFORE, Hubbard prays judgment against the Chula Vista Center
5  Defendant for:

6  1.    Injunctive relief, preventive relief, or any other relief the Court deems
7  proper.

8  2.    Declaratory relief that the Chula Vista Center Defendant violated the ADA
9  for the purposes of Unruh Act or Disabled Persons Act damages.

10  3.    Statutory minimum damages under either sections 52(a) or 54.3(a) of the
11  California Civil Code (but not both) according to proof.

12  4.    Attorneys' fees, litigation expenses, and costs of suit.[25]

13  5.    Interest at the legal rate from the date of the filing of this action.

14  <center>XXXIX. PRAYER FOR RELIEF</center>

15  WHEREFORE, Hubbard prays judgment against the Jamba Juice Defendants
16  for:

17  1.    Injunctive relief, preventive relief, or any other relief the Court deems
18  proper.

19  2.    Declaratory relief that the Jamba Juice Defendants violated the ADA for
20  the purposes of Unruh Act or Disabled Persons Act damages.

21  3.    Statutory minimum damages under either sections 52(a) or 54.3(a) of the
22  California Civil Code (but not both) according to proof.

23  4.    Attorneys' fees, litigation expenses, and costs of suit.[26]

24  5.    Interest at the legal rate from the date of the filing of this action.

25

26

27

28
---

[25]    This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[26]    This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

<center>Page 68</center>

XXXX. PRAYER FOR RELIEF

WHEREFORE, Hubbard prays judgment against the Pizzeria Uno Defendants for:

1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.    Declaratory relief that the Pizzeria Uno Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.    Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.    Attorneys' fees, litigation expenses, and costs of suit.[27]

5.    Interest at the legal rate from the date of the filing of this action.

XXXXI. PRAYER FOR RELIEF

WHEREFORE, Hubbard prays judgment against the Mervyn's Defendants for:

1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.    Declaratory relief that the Mervyn's Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.    Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.    Attorneys' fees, litigation expenses, and costs of suit.[28]

5.    Interest at the legal rate from the date of the filing of this action.

XXXXII. PRAYER FOR RELIEF

WHEREFORE, Hubbard prays judgment against the Starbucks Defendants for:

1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

---

[27] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[28] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

2.      Declaratory relief that the Starbucks Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[29]

5.      Interest at the legal rate from the date of the filing of this action.

<div align="center">XXXXIII. PRAYER FOR RELIEF</div>

WHEREFORE, Hubbard prays judgment against the JCPenney Defendants for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that the JCPenney Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[30]

5.      Interest at the legal rate from the date of the filing of this action.

<div align="center">XXXXIV. PRAYER FOR RELIEF</div>

WHEREFORE, Hubbard prays judgment against the Subway Defendants for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that the Subway Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[31]

---

[29] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[30] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[31] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

5.      Interest at the legal rate from the date of the filing of this action.

<div align="center">XXXXV. PRAYER FOR RELIEF</div>

WHEREFORE, Hubbard prays judgment against the Panera Bread Defendants for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that the Panera Bread Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[32]

5.      Interest at the legal rate from the date of the filing of this action.


DATED: March 12, 2008          DISABLED ADVOCACY GROUP, APLC



LYNN HUBBARD, III
Attorney for Plaintiff, Barbara Hubbard

---

[32] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Hubbard v. C.V. Center, Inc., et al.*
Plaintiff's Complaint

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# # 148750    — SH

## March 13, 2008
## 16:21:07

### Civ Fil Non-Pris
USAO #.: 08CV0471
Judge..: JOHN A HOUSTON
Amount.:                    $350.00 CK
Check#.: BC20601


**Total—> $350.00**


FROM: HUBBARD V. C.V. CENTER INC ET

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

BARBARA HUBBARD

**DEFENDANTS**

SEE ATTACHED LIST

*FILED*
*08 MAR 13 PM 4: 15*

**(b)** County of Residence of First Listed Plaintiff   SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

DISABLED ADVOCACY GROUP, APLC  (530) 895-3252
12 WILLIAMSBURG LANE CHICO, CA 95926

Attorneys (If Known)

**'08 CV 471   JAH LSP**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | PERSONAL PROPERTY | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☒ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Section 12101, et seq.
Brief description of cause:
Ongoing violations of the ADA Construction Standards

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE                                    DOCKET NUMBER

DATE
03/12/2008

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #  148750   AMOUNT  $350   APPLYING IFP         JUDGE         MAG. JUDGE

SU 3/13/08

## DEFENDANT LIST

1.)     C.V. Center, Inc.
2.)     Jamba Juice Company dba Jamba Juice #603
3.)     Casual Dining Services, Inc. dba Pizzeria Uno
4.)     Mervyn's, LLC
5.)     Starbucks Corporation dba Starbucks Coffee #6632
6.)     J.C. Penney Company, Inc. dba JCPenney #1274
7.)     Serler, Inc. dba Subway #31595
8.)     Manna Development Group, LLC dba Panera Bread Café #4284

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.    **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.    **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:    U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

VII.    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.    **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.